# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TIM BAKKEN, Individually and on behalf
of a putative class of all those similarly-situated,

No. 25-cv-07826

                        Plaintiff,

      -against-

UNITED STATES MILITARY ACADEMY;             
LT. GENERAL STEVEN W. GILLAND, in his Official    **AMENDED**
Capacity; BRIGADIER GENERAL SHANE R. REEVES,  **COMPLAINT**
in his Official Capacity; COL. KRISTA WATTS, in her
Official Capacity; COL. WINSTON WILLIAMS, in his
Official Capacity; COL. JOSHUA BERRY, in his Official  **JURY TRIAL**
Capacity; and LT. COL. CAITLIN CHIARAMONTE,    **DEMANDED**
in her Official Capacity,

                     Defendants.
-------------------------------------------------------------------x

       By and through his undersigned counsel, Plaintiff TIM BAKKEN, as and for his Complaint

against Defendants UNITED STATES MILITARY ACADEMY; LT. GENERAL STEVEN W.

GILLAND, in his Official Capacity; BRIGADIER GENERAL SHANE R. REEVES, in his

Official Capacity; COL. KRISTA WATTS, in her Official Capacity; COL. WINSTON

WILLIAMS, in his Official Capacity; COL. JOSHUA BERRY, in his Official Capacity; and  LT.

COL. CAITLIN CHIARAMONTE, in her Official Capacity, hereby alleges as follows:

### NATURE OF THE ACTION

       1. This is an action that seeks to defend and protect the fundamental right to freedom of

speech, as embodied in the First Amendment to the Constitution, and the right to academic

freedom, which is essential to a robust marketplace of ideas, an educated citizenry, and the

flourishing of our republic.

## PARTIES

2. Plaintiff TIM BAKKEN is a male of legal age who resides in the County of Orange, State of New York, within this judicial district.  Plaintiff is a civilian Professor of Law within the Department of Law and Philosophy at the United States Military Academy.

3. Defendant UNITED STATES MILITARY ACADEMY ("USMA" or the "Academy") is a four-year, federally-established undergraduate institution, located at West Point, New York, which prepares students ("Cadets") to become officers in the United States Army and then for employment in other positions after employment with the Army.  The Academy is an instrumentality of the United States Department of Defense and is within the Department of the Army.

4. Defendant LT. GENERAL STEVEN W. GILLAND is the Academy's current Superintendent and, as such, is the commanding officer of the Academy and of the military post at West Point.

5. Defendant BRIGADIER GENERAL SHANE R. REEVES is the Dean of the Academic Board of the Academy and, as such, is responsible for overseeing the Academy's academic mission, including oversight of all academic programs, students, and faculty members.

6. Defendant COL. KRISTA WATTS is the Vice Dean for Operations of the Academy and a member of the Dean's Office and, as such, is responsible for the operations of the Dean's Office in implementing the Academy's academic mission.

7. Defendant COL. WINSTON WILLIAMS is the Department Head of the Academy's Department of Law and Philosophy and, as such, is responsible for overseeing and coordinating the faculty, students, and curriculum in the Department of Law and Philosophy.

8. Defendant COL. JOSHUA BERRY is the Deputy Department Head of the Academy's Department of Law and Philosophy and, as such, assists the Department Head in overseeing and coordinating the faculty, students and curriculum in the Department of Law and Philosophy.

9. Defendant LT. COL. CAITLIN CHIARAMONTE is the Program Director of the law program within the Academy's Department of Law and Philosophy and, as such, is responsible for overseeing and coordinating the faculty, students and curriculum within the law program.

## JURISDICTION AND VENUE

10. As this action seeks to redress violations of the First Amendment to the United States Constitution, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11. The events giving rise to the claims asserted herein occurred primarily in the County of Orange, State of New York, which is within this judicial district and, therefore, venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

**A. Background – The United States Military Academy.**

12. The Academy is a four-year, federally-established undergraduate institution located at West Point, New York, which prepares students ("Cadets") to become officers in the United States Army and then for other employment positions.  It is accredited by the Middle States Commission on Higher Education.

13. The Academy is an instrumentality of the United States Department of Defense and is within the Department of the Army.

14. The Academy is ultimately overseen by its Superintendent, a position currently held by Defendant Lt. General Gilland, who is the commanding officer of the Academy and of the military post at West Point.

3

15. The academic mission of the Academy is directly overseen by the Office of the Dean of the Academic Board, a position currently held by Defendant Brigadier General Reeves.

16. The Academy's academic program consists of 13 academic departments, each of which is overseen by an Army Colonel, who is designated as a Department Head.

17. All the academic departments have Deputy Department Heads, all of whom are Army Colonels, who assist in overseeing the operations of the department, and all the departments have Program Directors, who oversee various academic disciplines.

18. Since its founding in 1802, all the superintendents, deans, commandants, and department heads have been military officers.

19. From 1812 to the present, approximately 151 of 156 of USMA's superintendents, commandants, and deans (about 97%) have been graduates of West Point.

20. In addition to its commissioned military officers, the Academy employs civilians as part of its faculty, and civilians comprise approximately one-fifth of the faculty, which includes more than 500 members.

21. Some of the civilian faculty members are retired military officers, who have previously worked at USMA with the Department Heads and Deans and, who, upon resignation or retirement, were hired by the Department Heads, Deans, and Superintendents to work as civilian professors.

22. The Law and Philosophy Department is one of USMA's 13 academic departments, and it is comprised of the Law and Legal Studies Program and the Philosophy Program.

23. Since 1993, when USMA began to hire full-time civilian faculty members in all departments, approximately 14 of the 18 civilian U.S. citizen faculty members in the law program (or about 78%) have been retired or reserve military officers.

4

24. Defendant Col. Wiliams is currently the Department Head of the Law and Philosophy Department.

25. Defendant Col. Berry is currently the Deputy Department Head of the Law and Philosophy Department.

26. Defendant LT. Col. Chiaramonte is currently the Program Director of the Law and Legal Studies Program within the Law and Philosophy Department.

**B. Plaintiff Tim Bakken**

27. Since June 18, 2000, Plaintiff Tim Bakken has been employed by USMA as a civilian professor of law (assistant, associate, and full, as of 2004).

28. Plaintiff earned his J.D. from the University of Wisconsin Law School and his LL.M. from Columbia University School of Law, and he previously practiced law in New York City and held other teaching positions.

29. Plaintiff is the longest serving law professor in USMA's history.

30. During his employment at USMA, Plaintiff has authored books, articles, and essays and lectured and participated in discussions at national conferences and international engagements.

31. Plaintiff's previous writings have included books, law review articles, social science articles, and essays.

32. Plaintiff has spoken and written publicly and for external audiences in the areas of constitutional law, First Amendment law, criminal law, and corporate law, among other areas.

33. Plaintiff has been a visiting scholar (or equivalent) at the University of Cambridge Faculty of Law, Columbia University School of Law, New York Law School, Australian National University College of Law, and University of Sydney Law School, and a Fulbright Specialist at the University of Chile Faculty of Law.

34. During his employment at USMA, Plaintiff has appeared as a guest on podcasts, radio programs, and CSPAN2, and has been interviewed by the New York Times, Christian Science Monitor, USA Today, and National Public Radio, among other media.

35. In 2007, Plaintiff traveled with U.S. soldiers to Kabul during the war in Afghanistan and created the Department of Law at the National Military Academy of Afghanistan.

36. The activities described in Paragraphs "30" through "35" involved engagements external to USMA.

37. For every external and public event, conference, speaking engagement, media interview, and publication of any writing, Plaintiff was identified as a professor at USMA.

38. During his employment at USMA, Plaintiff has spoken out critically about certain policies and practices of the Academy and/or the U.S. Military.

39. By way of example, in 2011, Plaintiff reported to a previous Dean and Vice Dean what he believed was wrongdoing by senior military officers at West Point – namely that military Department Heads were hiring retired military officers into civilian faculty positions over more qualified civilian applicants and paying them more than better-qualified civilian faculty members.

40. After Plaintiff's report to the Dean and Vice Dean, and as a consequence thereof, the Department Head of what was the Department of Law at the time (Philosophy was added in 2024), Colonel Maritza Saenz Ryan, changed the conditions of Plaintiff's employment for the worse.

41. Thereafter, Plaintiff filed a complaint with the U.S. Merit Systems Protection Board ("Board"), complaining about Col. Saenz Ryan's actions.

42. In 2012, after a three-day trial before the Board, the administrative judge found that Plaintiff was a whistleblower and the prevailing party in the action and issued a corrective order against USMA, directing that it restore Plaintiff to the conditions of employment prior to USMA's

wrongful action and awarding Plaintiff costs and attorney's fees. *See Bakken v. U.S. Army*, U.S Merit Systems Protection Board, New York Field Office, NY-1221-12-0041-W-1 (Jul. 5, 2012).

43. USMA did not appeal this determination.

44. By way of further example, in 2020, Plaintiff published the book *The Cost of Loyalty: Dishonesty, Hubris, and Failure in the U.S. Military*.

**C. USMA begins to scrutinize faculty speech.**

45. On January 27, 2025, President Trump issued an Executive Order that referred to the federal service academies.

46. The Executive Order reads, in part, "The Secretary of Defense and the Secretary of Homeland Security shall carefully review the leadership, curriculum, and instructors of the United States Service Academies and other defense academic institutions associated with their respective Departments to ensure alignment with this order.  In addition, these institutions shall be required to teach that America and its founding documents remain the most powerful force for good in human history." *See* Executive Order, Restoring America's Fighting Force, § 6(c), (Jan. 27, 2025) available at, https://www.whitehouse.gov/presidential-actions/2025/01/restoring-americas-fighting-force/ (last visited Sept. 16, 2025).

47. In the spring of 2025, USMA withdrew books from its library, removed words and phrases from faculty members' syllabi, eliminated courses and majors, and threatened or inflicted punishment on faculty members for engaging in teaching, speaking, and writing without the prior approval of Defendants or other Department Heads at USMA.

48. In the summer of 2025, USMA removed from all faculty members' webpages on the USMA website the "Publications" tab, which had listed the faculty members' published books, articles, essays, and scholarship entries.

49. Upon information and belief, USMA took the actions described in Paragraphs "47" through "48" above, at least in part, because of the January 27, 2025 Executive Order.

**D. The Dean's Policy and Operating Memorandum No. 03-24 requires faculty members to obtain prior approval from their Department Heads before they are permitted to speak or write externally while on duty or when using their USMA affiliation.**

50. On February 13, 2025, the Office of the Dean (headed by Defendant Reeves) promulgated and implemented Dean's Policy and Operating Memorandum No. 03-24, entitled Academic Engagement Policy ("DPOM 03-24" or the "Academic Engagement Policy"). A copy of the Academic Engagement Policy is annexed as Exhibit 1 and is incorporated by reference and made a part hereof.

51. The Academic Engagement Policy applies to all faculty members covered by USMA Regulation 150-4, Academic Freedom, and, as such, applies to Plaintiff and all other civilian and military faculty members of the Academy. *See* Exhibit 1 at 1 ¶ 3.

52. The Academic Engagement Policy's stated purpose is to "standardize[] procedures for engaging with audiences external to USMA." *See* Exhibit 1 at 1 ¶ 1.

53. To effectuate its purpose, the Academic Engagement Policy provides as follows:

> Department Heads are the approval authority for engagements with any audience external to USMA that are within faculty members' disciplinary areas of expertise while on duty or when using any USMA affiliation or branding. Examples of such engagements include (but are not limited to) journal publications, conference presentations, media interviews, podcasts, opinion editorials, blog posts, social media posts, etc. Department Heads are also the approval authority for military faculty members to speak publicly in uniform. The Director of Library Services and Vice Deans serve in the same capacity as Department Heads for works related to librarian or staff duties.

*See* Exhibit 1 at 1-2 ¶ 4(b).

54. Moreover, the policy provides that "Department Head approval may be contingent on

8

conditions such as use of a disclaimer (AR360-1 7-44f(3)) or prohibition from using affiliation or branding."

55. Defendant Col. Watts, as Vice Dean for Operations, signed the Academic Engagement Policy for the Dean of the Academic Board and is identified as the "proponent" of DPOM 03-24. *See* Exhibit 1 at 2.

56. Like all USMA regulations, directives and policies, a faculty member's failure to comply with DPOM 03-24 may lead to disciplinary action, up to and including termination of employment.

57. On March 4, 2025, Plaintiff attended a Faculty Council meeting, which is a monthly meeting of senior faculty members at USMA, and this was the first such meeting since DPOM 03-24 was promulgated the prior month.

58. At the meeting, Defendant Reeves, who serves as Chair of the Faculty Council, introduced and defended the new Academic Engagement Policy.

59. As legal support for the regulation, Defendant Reeves cited *Parker v. Levy*, 413 U.S. 733 (1974), where the Supreme Court upheld the Army's conviction under the military's penal code of an Army captain who spoke against the Vietnam War.

60. Defendant Gilland attended the part of the meeting when Plaintiff argued that DPOM 03-24 is unconstitutional.

61. At the meeting, Plaintiff expressed his view that DPOM 03-24 was unconstitutional because it imposed an improper and standardless licensing regime, constituted a prior restraint upon speech, and permitted the Academy to prohibit speech based on its content.

62. While Plaintiff was speaking in opposition to the regulation, one of the senior administrators at USMA, the Deputy Department Head of Geography and Earth Sciences, Colonel

John Gregory, one of 13 Deputy Department Heads, directed Plaintiff to stop speaking.

63. After the meeting, Col. Gregory, who holds a law degree, approached Plaintiff and told him he should file a "class action" lawsuit to challenge the constitutionality of the regulation.

64. Also after the meeting, Col. Julia Coxen, who is the Department Head of the Systems Engineering Department and is the Vice Chair of the Faculty Council, told Plaintiff that the Dean's Office promulgated DPOM 03-24 so that the Academy's senior military officers could show to the new administration "radical compliance" as a way to protect their positions.

65. Echoing Col. Coxen's remark, on July 18, 2025, Col. Williams told Plaintiff that the purpose of DPOM 03-24 was to protect the Dean and Superintendent from termination by showing their obedience to the new administration.

66. Col. Williams further stated that he believed that DPOM 03-24 would lead to *Parker v. Levy*, cited by Defendant Reeves at the Faculty Council meeting and which applies to military personnel, being overruled.

67. On March 5, 2025, Plaintiff attended a Law and Philosophy Department faculty meeting, where Department Head Williams discussed and defended the Academic Engagement Policy and emphasized that all faculty members must follow this new regulation.

68. At that meeting, Plaintiff again voiced his opinion that DPOM 03-24 was unconstitutional, citing U.S. Supreme Court cases to support his position.

69. In response to Plaintiff's arguments, Defendant Deputy Department Head Berry turned red, pounded the table, and admonished that Plaintiff must obey the regulation.

70. After the meeting, Defendant Berry approached Plaintiff and told him he should file a "class action" lawsuit to challenge the constitutionality of the regulation.

71. Later that same day, March 5, 2025, the Law and Philosophy Department's Executive

10

Officer, Lt. Col. Joshua Lehman, sent an email to DLP (Department of Law and Philosophy) faculty, attaching a copy of DPOM 03-24 and specifying the protocol for faculty members to obtain approval thereunder for speaking and writing: "DLP faculty should run their proposals through either Col. Mayer (philosophers) or LTC Chiaramonte (lawyers). These officers will serve as reviewers of the academic engagement proposals.  COL Mayer and LTC Chiaramonte have delegated authority from Col. Williams to **approve** proposals.  Col. Williams has NOT delegated disapproval authority.  Col. Williams should only receive proposals through these two officers." (boldface in original).

72. Thus, to seek approval under the Academic Engagement Policy, Plaintiff (and all other law professors) must submit his proposal to Program Director Chiaramonte, who may approve the proposal or otherwise refer the proposal to Department Head Williams, who has ultimate authority to approve or disapprove the proposed engagement.

73. On July 16, 2025, Defendant Chiaramonte solicited requests for funding for the academic year.

74. On July 17, 2025, Plaintiff wrote to Defendant Chiaramonte., "I'd like to attend and/or present a paper at a conference this academic year, if approved."

75. On July 21, 2025, Chiaramonte wrote to Plaintiff, "Awesome!  Do I get to read it?  I will add it to the budget!"

76. One minute later, Chiaramonte wrote back to Plaintiff, "What is the title?"

77. Since beginning employment at USMA, Plaintiff had not previously received such an inquiry.

78. As he could not write a paper until he knew what topic Chiaramonte and Williams would approve, Plaintiff wrote to Chiaramonte: "I haven't prepared a paper or a title for a

11

conference, so I don't have those to relay to you."

79. To aid in his understanding of what engagements would be permissible, on July 17, 2025, Plaintiff emailed Defendant Berry to seek clarification about how the Academic Engagement Policy would be implemented and applied to Plaintiff: "So that I may know what writing, speaking, and engagements are approved and what I may speak and write about, will you please let me know the USMA and DLP standards, if any, for approving engagements, topics, and external audiences that apply to me?"

80. The next day, July 18, 2025, Defendant Berry, copying Defendant Williams, responded to Plaintiff's email as follows:

> Thank you for raising this concern.
>
> In the absence of specific information about the nature of the scholarship you are considering, I am unable to provide a definitive determination regarding whether the proposed academic engagement may be approved in an official capacity.
>
> That said, it may be helpful for you to have a general understanding of the types of academic engagements that have been approved or disapproved for publication or media involvement when conducted in an official capacity.
>
> In the vast majority of cases, requests have been approved when the engagement involves scholarship that:
>
>> (1) yields in-depth disciplinary knowledge accepted by other scholars (see USMA Regulation 150-3), and
>>
>> (2) does not conflict with applicable Presidential Executive Orders, Department of Defense (DoD), or Department of the Army directives or memoranda.
>
> Approved academic engagements typically involve peer-reviewed scholarship grounded in original research and supported by citations. Media engagements have also been approved when the content focuses specifically on the faculty member's research and academic expertise. A good example is this podcast / video discussion between the Dean and COL John Gregory: (US China

Competition: Col. Gregory on Law & Military Culture).

Requests have not been approved when the proposed engagement conflicted with applicable Executive Orders or DoD/Army guidance, or when the content did not meet the standard of academic scholarship—particularly when the material reflected personal opinions on current events rather than research-based scholarly analysis.

As you are aware, DPOM 03-24 applies only to official engagements—that is, those conducted on duty or using a USMA affiliation or branding. Engagements undertaken solely in a personal capacity are not governed by this directive, though they may still be subject to other laws and policies applicable to federal employees.

I also encourage you to review USMA Regulation 150-3, which provides guidance on what constitutes scholarship. Not all engagement qualifies as academic or scholarly under institutional definitions.

If you would like assistance evaluating whether a specific topic or project might meet the relevant standards and policies, either I or COL Williams would be glad to meet with you. Given your expertise in criminal law, you might consider exploring topics related to the Supreme Court's recent term that align with your previous scholarship (e.g., *The Plea of Innocence*). Engagements focused on such topics would likely align well with DPOM 03-24.

As always, LTC Chiaramonte, COL Williams, and I are available to discuss your ideas and concerns. We are committed to encouraging world-class scholarship that contributes to the academic development of Cadets, advances the discipline of law, and supports the broader mission of the Army.

### E. DPOM 03-24 is unconstitutional on its face and as applied to Plaintiff, who is adversely affected by the regulation

81. Over the last 25 years, Plaintiff has spoken and written to external audiences using his USMA affiliation on countless occasions, including speaking at conferences and to journalists, lecturing at institutions other than USMA, and publishing articles, opinion pieces, essays, and books.

82. Plaintiff's experience and affiliation with, and position within, the Academy provide him with unparalleled insight and a critical level of credibility and *bona fides* when writing and speaking on matters critical of the United States government, United States Military, and to academic, professional, and general audiences nationally and internationally, strengthening his reputation, increasing the demand for his speaking engagements in academic and non-academic writings, and making his commercial works more marketable.

83. Plaintiff does not have a security classification.

84. Plaintiff has not agreed with USMA or any government entity not to write or speak or engage in expression to audiences external to USMA and the government.

85. Plaintiff has not agreed to any type of approval or censorship regime by USMA or any entity of the government.

86. Plaintiff wishes to continue to speak and write to external audiences while using his USMA affiliation as a means to communicate his experience and expertise in and outside his discipline and his work history for more than 25 years.

87. Absent such cursory information about where he has been employed and continues to be employed, the Plaintiff would have a 25-year gap in his life that could not be explained if USMA and the other Defendants were permitted to prohibit him from communicating his professional affiliation.

88. Plaintiff presently has a contract with a book publisher to publish a new book and wishes to communicate in the book his affiliation with USMA and does not wish to seek the prior approval of the Defendants to do so prior to the publication of the book.

89. In addition to his own outside writings and publications, USMA has required Plaintiff to teach courses, speak and publish writings publicly and communicate to external audiences as a

condition of employment, to earn promotion, to earn tenure, and to receive increases in salary.

90. Notably, on July 17, 2025, Defendant Berry, who is Plaintiff's immediate supervisor, with Defendants Williams and Reeves above Berry, emailed to Plaintiff a four-page memorandum, dated July 1, 2025, in which Defendant Barry conveyed to Plaintiff that Defendants Berry and Williams, since they previously evaluated Plaintiff in January 2025, changed the evaluation standards for Plaintiff for the 2025-2026 evaluation period.

91. In his memorandum, Berry wrote: "As described above, we will implement 'Teaching, Scholarship, Service, Cadet Development, and Faculty Development' as your performance elements."

92. Defendant Berry described the standards that he and Defendant Williams would apply to the Plaintiff, including: "Evidence of excellence in teaching and curriculum development such as a published textbook (or contribution to a textbook) in the discipline . . . . Scholarship is active engagement, participation, and growth in an academic discipline. Quality scholarship yields in-depth disciplinary knowledge that has been shared with and accepted by other scholars."

93. In his email, Berry wrote to Plaintiff: "Shortly, I will transfer your 2026 Performance Plan to you for your review and input. You will notice that I have changed several elements of your performance plan . . . . An example for scholarship might be, 'I will write an article for submission to a peer-reviewed law journal for publication.'"

94. Before engaging with external audiences on matters within his area of discipline and using his USMA affiliation in doing so, whether for outside purposes, such as his personal speaking and writing engagements, or in furtherance of his job requirements, such as speaking at conferences or publishing journal articles to satisfy his evaluation criteria, under DPOM 03-24, plaintiff must first seek and gain approval from his Department Head.

15

95. Under federal law, Plaintiff is entitled to Copyright protection in all works he produces in the course of his employment. *See* 17 U.S.C. § 105

96. As written, and in practice, DPOM 03-24 is a licensing regime and a prior restraint on Plaintiff's external speaking and writing engagements and expression.

97. As is evident from its face and from Defendant Berry's July 18, 2025 email to Plaintiff about expression that Defendants might approve for the Plaintiff, DPOM 03-24 is a content-based restriction on speech in that Department Heads refer to the content of the proposed engagement to determine whether to approve such engagement.

98. In addition, Defendant Berry's July 18, 2025 email to Plaintiff shows that DPOM 03-24 implements a regime of viewpoint discrimination in that engagements have been disapproved when they "conflict with applicable Presidential Executive Orders, Department of Defense (DoD), or Department of the Army directives or memoranda."

99. As a prior-restraint or licensing regime, DPOM 03-24 provides no objective standards for its implementation, leaving approval to the unfettered and standardless discretion of Department Heads, and providing no process for timely appeal or review.

100. DPOM 03-24's intent and effect, on its face and as applied to Plaintiff and all other civilian professors, is to chill and suppress speech and censor viewpoints that might be contrary to the views of, *inter alia*, the Academy, the Defendants individually, the United States Army, the Department of Defense, and their leaders, including the Secretary of Defense and President.

101. For example, the book for which Plaintiff is currently under contract to publish is critical of some aspects of West Point and, should Plaintiff be required to seek approval to use his USMA affiliation in his publication, it is very likely such approval will be withheld.

102. Moreover, denial of the ability to use his USMA affiliation in his new book may

16

substantially alter the book's content.

**F. The Academy's scrutiny and suppression of faculty speech as embodied by DPOM 03-24 extends to the classroom.**

103. On August 12, 2025, Defendant Reeves addressed all the civilian and military members of the faculty and instructed them on what they may say while teaching Cadets in the classroom: "The classroom is meant to be a professional environment . . . . If you start to feel that perhaps maybe you're starting to advocate for a particular position or ideology, which I don't think you do, when you're taking a position where you're like why we believe this so I'll help the Cadets believe this way, you're wrong. That's not what we do. They don't need to know what I believe."

104. Defendant Reeves' August 12, 2025 remark is consistent with the January 27, 2025 Presidential Executive Order and USMA response thereto, as described in Paragraphs "45" through "49" above, as well as with DPOM 03-24 in that its intent is to control, chill and suppress faculty speech.

105. Plaintiff understood Reeve's August 12, 2025 as a directive from a superior, disobedience of which could result in discipline, and he has altered his classroom conduct to comply with this directive.

106. As a professor of law, Plaintiff's inability to express opinions on the subject matter being taught is stifling and disruptive to the educational process.

107. For instance, as a professor of law, Plaintiff is now inhibited from expressing his opinions or views on matters important to the instruction of law, such as, for example whether a particular majority or dissenting opinion is persuasive and why.

## CLASS ACTION ALLEGATIONS

108. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class"), pursuant to Federal Rule of Civil Procedure 23.

17

109. The Class Plaintiff wishes to represent is defined as follows: All civilian faculty members of USMA.  Plaintiff reserves his right to amend this Class definition if discovery and/or further investigation reveal that the Class should be modified.

110. The number of members of the Class is so numerous that joinder of all members is impracticable.  Upon information and belief, the Class includes more than 100 persons.

111. Questions of law and fact that are common to the members of the Class predominate over questions that affect only individual members.  Among the questions of law and fact that are common to the class are:

a. Whether DPOM 03-24 imposes an unconstitutional and content-based prior restraint on civilian speech?

b. Whether DPOM 03-24 delegates overly-broad licensing discretion to a government official, without narrow, objective and definite standards, allowing for arbitrary application, viewpoint discrimination, and the suppression of protected speech?

c. Whether DPOM 03-24 and Defendant Reeves' directives to faculty unduly and impermissibly chill on-duty and/or classroom speech and, thus, unlawfully infringe upon faculty members' academic freedoms?

112. Plaintiff's claims are typical of the claims of the members of the class because Plaintiff, like all Class members, is a civilian faculty member at USMA and subject to DPOM 03-24 and asserts that this policy is unconstitutional on its face, and as applied to him, and as applied to all civilian faculty members.

113. Plaintiff will fairly and adequately protect the interests of the Class because his interests are aligned and coincident with, and not antagonistic to, those of the Class, and Plaintiff

has retained counsel with substantial litigation experience, including multi-party litigation and class actions.

114. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

115. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly-situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail, and it is unlikely there will be difficulties in the management of this case that would preclude its maintenance as a class action.

116. Defendants have acted in a manner that is generally applicable to the entire Class, thereby making final relief appropriate with respect to the Class as a whole, and separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the class, which would establish incompatible standards of conduct for Defendants.

## JURY DEMAND

117. Plaintiff hereby demands a trial by jury.

## CLAIMS FOR RELIEF

### FIRST CLAIM

## VIOLATION OF RIGHT TO FREEDOM OF SPEECH
## PRIOR RESTRAINT – OFF DUTY SPEECH
### U.S. Const., Amend I.

118. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "117" above.

119. The First Amendment to the U.S. Constitution provides, in part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend I.

120. DPOM 03-24 is unconstitutional on its face and as applied to Plaintiff and members of the putative Class he represents because:

   a.   It imposes an unconstitutional and content-based prior restraint on civilian speech, censoring and suppressing speech on the basis of its content and viewpoint.

   b.   It delegates overly broad licensing discretion to a government official without narrow, objective and definite standards, allowing for arbitrary application, viewpoint discrimination, and the suppression of protected speech.

121. Plaintiff is directly harmed by DPOM 03-24 because it imposes a licensing regime and prior restraint on his ability to speak and write externally to USMA for his own independent purposes while using his USMA affiliation and, without that affiliation, his reputation and marketability as a speaker and writer are impaired.

122. Like Plaintiff, the Class members he seeks to represent are directly harmed by DPOM 03-24 because it imposes upon them an unconstitutional and content-based prior restraint on their speech to external audiences when done for their own independent and/or commercial purposes.

20

## SECOND CLAIM

**VIOLATION OF RIGHT TO FREEDOM OF SPEECH
PRIOR RESTRAINT – ON DUTY SPEECH
U.S. Const., Amend I**.

123. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "117" above.

124. The First Amendment to the U.S. Constitution provides, in part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend I.

125. DPOM 03-24 is unconstitutional on its face and as applied to Plaintiff and members of the putative Class he represents because:

    a. It imposes an unconstitutional and content-based prior restraint on Plaintiff's official and on-duty speech, censoring and suppressing speech on the basis of its content and viewpoint.

    b. It delegates overly broad discretion to a government official, without narrow, objective and definite standards, allowing for arbitrary application, viewpoint discrimination, and the suppression of protected speech.

126. Plaintiff is directly harmed by DPOM 03-24 because it imposes a prior restraint on his ability to speak and write when doing so on duty and/or as a condition of his employment at USMA, such as when attending and speaking at conferences and/or publishing journal articles or essays in satisfaction of his evaluation criteria.

127. Like Plaintiff, the Class members he seeks to represent are directly harmed by DPOM 03-24 because it imposes upon them an unconstitutional and content-based prior restraint on their speech to external audiences when done for purposes of satisfying their job requirements.

21

## THIRD CLAIM

**VIOLATION OF RIGHT TO FREEDOM OF SPEECH
ACADEMIC FREEDOM
U.S. Const., Amend I**.

128. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "117" above.

129. The First Amendment to the U.S. Constitution provides, in part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend I.

130. By directing faculty to refrain from expressing their personal views and opinions in class, Defendant Reeves has unduly burdened plaintiff's and putative Class members' academic freedoms and impaired their ability to effectively instruct their students.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Accept jurisdiction over this action and all parties;

B. Empanel a jury to hear all claims;

C. Enter an Order adjudging and declaring that DPOM 03-24 is unconstitutional;

D. Enter an Order preliminarily and permanently enjoining Defendants from enforcing DPOM 03-24 against Plaintiff and the Class he represents;

E. Enter and Order adjudging and declaring that Defendant Reeves' directive constitutes and unconditional infringement on Plaintiff's and the Class members' academic freedoms and enjoining same;

F. Award to Plaintiff, as a class representative, an incentive or service award in an amount that, in the Court's judgment and discretion, is just, proper, and equitable;

G. Award to Plaintiff nominal damages;

H. Award to Plaintiff the reasonably incurred attorneys' fees and litigation costs associated

with the prosecution of this matter; and

I. Award to Plaintiff such additional relief as the Court deems just, proper and equitable

under the circumstances.

Dated: Newburgh, New York        Respectfully Submitted,
        September 22, 2025       GOLDMAN LAW, PLLC
                                     *Co-Counsel* for *Plaintiff*

                                 By:     /s/ Jonathan R. Goldman
                                       Jonathan R. Goldman, Esq. (JG8710)
                                       372 South Plank Road, Ste. 2
                                       Newburgh, New York 12550
                                       (845) 534-6472 Ext. 1001
                                       (845) 579-3064 [Fax]
                                       jgoldman@jrgoldmanlaw.com

                                 Bergstein & Ullrich
                                 *Co-Counsel for Plaintiff*

                                 By:     /s/ Stephen Bergstein
                                       Stephen Bergstein (SB6810)
                                       5 Paradies Lane
                                       New Paltz, New York 12561
                                       (845) 419-2250 [Tel]
                                       (845) 469-1277 [Fax]
                                       steve@tbulaw.com

# EXHIBIT 1

# Dean's Policy and Operating Memorandum 03-24

**OFFICE OF THE DEAN**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK  10996-1905**

MADN

**13 February 2025**

Memorandum No. 03-24

## ACADEMIC ENGAGEMENT POLICY

|  | Para |
|---|---|
| Purpose | 1 |
| References | 2 |
| Applicability | 3 |
| Policy and Procedures | 4 |
| Proponent | 5 |

1. PURPOSE.  This policy standardizes procedures for engaging with audiences external to USMA.

2. REFERENCES.

    a.  DODI 5230.09, Clearance of DOD Information for Public Release.

    b.  DODI 5230.27, Presentation of DoD-Related Scientific and Technical Papers at Meetings

    c.  DODI 5230.29, Security and Policy Review of DOD Information for Public Release.

    d.  AR 70-31, Standards for Technical Reporting

    e.  AR 360-1, The Army Public Affairs Program.

    f.  AR 670-1, Wear and Appearance of Army Uniforms and Insignia.

    g.  USMA Regulation 150-4, Academic Freedom.

    h.  USMA Regulation 150-6, Academy Research.

3. APPLICABILTY.  Faculty members and librarians covered by USMA Regulation 150-4, Academic Freedom.  All staff and faculty must be familiar with the provisions of AR360-1, The Army Public Affairs Program.

4. POLICY AND PROCEDURES.

    a. This policy does not apply to work that results from the fulfillment of direction or a tasking by entities within USMA, the Department of the Army, or the Department of Defense, or that have potential OPSEC or security concerns.

    b. Department Heads are the approval authority for engagements with any audience external to USMA that are within faculty members' disciplinary areas of expertise while on duty or when using any USMA affiliation or branding. Examples of such engagements include (but

MADN
SUBJECT:  Academic Engagement Policy

    are not limited to) journal publications, conference presentations, media interviews, podcasts, opinion editorials, blog posts, social media posts, etc.  Department Heads are also the approval authority for military faculty members to speak publicly in uniform. The Director of Library Services and Vice Deans serve in the same capacity as Department Heads for works related to librarian or staff duties.

    c. Department Heads should consult with the Vice Dean for Engagement and Research (VDER) as necessary when assessing requests for engagement with external audiences.

    d. Department Head approval may be contingent on conditions such as use of a disclaimer (AR360-1 7-44f(3)) or prohibition from using USMA affiliation or branding.

    e. Departments will work with the VDER and the Dean's Engagement Cell to highlight public engagements as appropriate.

    f. Any questions should be directed to the VDER.

5. PROPONENT.  The proponent for this *Dean's Policy and Operating Memorandum* is the Vice Dean for Operations, Office of the Dean (MADN), x2807.

FOR THE DEAN OF THE ACADEMIC BOARD:

WATTS.KRISTA.LEIGH.1082977453
Digitally signed by WATTS.KRISTA.LEIGH.1082977453
Date: 2025.02.13 14:06:35 -05'00'

KRISTA WATTS
COL, Academy Professor
Vice Dean for Operations

2